Billings, Thomas P., J.
For the reasons that follow, Plaintiffs Motion for Judgment on the Pleadings is DENIED and Defendant’s Motion to Confirm Arbitration Award is ALLOWED, as specified in the Order below.
BACKGROUND
The defendant (“Cummings”) was the Chief of Police for the City of Newton. Allegations of misconduct came to the attention of the Mayor, who retained an outside contractor (Edward Mitnick, Esq.) to undertake an investigation. When it received his report, the City filed five charges of conduct unbecoming a Police Chief.
A hearing was held on October 10, 2012, at which the City and Cummings were represented by counsel. The City called four witnesses and introduced three exhibits. Cummings called three witnesses, offered no exhibits, and did not testify. The next day the hearing officer (Robert R. Rooney, also an outside contractor) issued a three-page document titled “Findings of Fact by Hearing Officer Robert R. Rooney.” He found that Cummings had engaged in conduct unbecoming a Police Chief on five occasions, when he (1) called his secretary a “bitch”; (2) told her she looked like a “whore” in the workplace; (3) remarked to a pregnant police officer, “You look almost as fat as I am”; (4) kicked his secretary, breaking her shoe and injuring her foot; and (5) falsely told his secretary that an “I-Team” was investigating her. Cummings was terminated that day.
Cummings’ ñve-year Chief of Police Contract, dated March 5, 2009, provided that he could be terminated “for cause and after a hearing,” and that “cause” included “conduct unbecoming a Police Chief.” Certain due process rights—notice, a hearing and the opportunity to respond; right to counsel; confrontation, and so forth—were guaranteed. (Section 5(a) and (b).) The Contract also had the following arbitration clause:
18. Arbitration
Any dispute concerning the meaning or application of the terms of this Agreement, or a claim to breach, or the termination of this Agreement, or the termination of employment of the Chief of Police, shall be resolved exclusively by arbitration under the Voluntary Labor Arbitration Rules of the American Arbitration Association. The arbitrator’s decision, if in accordance with the law, shall be final and binding upon the parties. The arbitrator shall have no power to add to, detract from or modify any of the terms of this Agreement, but shall otherwise have the power to adjudicate any disputes and apply any appropriate remedy. The administrative costs shall be borne equally by the parties and each party shall bear the cost of its own legal fees and litigation expenses. The parties acknowledge that they are expressly waiving resort to the courts and the right to trial by jury, and submitting to arbitration as the exclusive method for the adjudication of any disputes arising from this Agreement, to any claim to breach, or the termination of this Agreement, or the termination of the employment of the Chief of Police.
The matter went to arbitration. As the Arbitrator (Michael W. Stutz, from the AAA panel) framed the issues, apparently by agreement of the parties,
The questions to be answered at arbitration are:
1) Whether the City satisfied its burden of proving that Mr. Cummings engaged in conduct unbecoming a Police Chief, as charged and found by Hearing Officer Robert Rooney.
2) If not, what shall be the remedy?
Hearings began in March and ended in June 2013. In the Arbitrator’s summary,
Voluminous evidence was submitted into the record, including Mr. Mitnick’s report dated August 21, 2012, the transcript and video of the public disciplinary hearing on October 10, 2012 and testimony taken during five days of arbitration hearings.
The witnesses included Cummings, who was called without objection by the City.
In a 28-page award dated October 10, 2013, the Arbitrator found that Cummings had not committed conduct unbecoming a Police Chief, and ordered that he be reinstated for the balance of his five-year term and reimbursed “for lost benefits under the Contract, including back pay and benefits, minus unemployment benefits or interim earnings, if any.” With respect to the five charges:
1. The Arbitrator found that Cummings had kicked his secretary in the foot, but that “(etyeryone agreed that this incident was a joke gone astray.” Cummings “had no bad intent,” and apologized and offered to fix the shoe. The incident went unreported until two years later, eight months after Cummings had suspended the secretary and instituted criminal proceedings for theft of money from the Chiefs office.[1]
2. He found that the “I-Team Comment” occurred, but that it was an attempt to conceal the identity of a coworker who, without Cummings’ prior knowledge, had photographed the secretary on breaks and at home when she was supposed to be at work. The I-Team ruse was intended “to impress upon her the seriousness of her theft of time and to let her know that someone was watching her,” conduct that was “awkward and misdirecting, but. . . was not misconduct or conduct unbecoming a Police Chief.”
3. He credited Cummings’s testimony that the pregnant officer had, when he asked how she was feeling replied, “I feel fat,” and that he had replied, “ ‘At least you aren’t as large as I am,’ which he intended *373 and views as a self-deprecating comment about his own size, but which the officer ”[u]nfortunately . . . took . . . personally."
4 & 5. On the “bitch” and “whore” allegations, the Arbitrator discredited the secretary, whose accusations were first leveled after her suspension and criminal charge. The Arbitrator instead credited witnesses who “agreed that Chief Cummings does not use such language.”
The Ciiy filed this action a week later, seeking to vacate the award. The Complaint alleges that the award was not “in accordance with the law,” because the Arbitrator (a) “failed to properly consider the negative inference drawn by the Mayor’s designee [Rooney] regarding Cummings’s decision not to testify at his hearing”; (b) “improperly analyzed the violative conduct from the perspective of the perpetrator only”; and (c) “improperly mandated a remedy of specific performance which is against public policy.”
Cross motions for judgment on the pleadings and for confirmation of the Award were heard on August 19, 2014 by a different judge. The City’s brief argued the aforementioned three grounds pled in the Complaint. The hearing judge (Desmond, J.) denied both motions but remanded the matter to the Arbitrator, stating:
The issue is whether, at the time of the initial hearing, the evidence was sufficient to support Hearing Officer Rooney’s findings. The court finds that this question was not properly addressed. To answer this question the arbitrator is confined to reviewing the evidence presented at the hearing conducted on October 2, 2012. Specifically, the testimony of Chief Cummings should not have been allowed at arbitration due to the fact that Hearing Officer Rooney did not have the benefit of that evidence, at Mr. Cummings’ election, in making his ultimate determination of termination.
The Arbitrator was therefore directed to revisit the matter. The judge added: “The testimony of Mr. Cummings is to be excluded from consideration along with any other evidence that was not entered at the time of the initial hearing conducted on October 2, 2012.”
The Arbitrator, whose dissatisfaction with this turn of events is palpable in his second Award dated March 16, 2015, nonetheless followed orders. He “disregarded the entire five-day trial de novo,” examining in detail the transcript of the original one-day hearing. He found that the Mayor’s hearing was unfair in several respects, including cutting off cross examination of the secretary concerning her motive and drawing an adverse inference from Cummings’ decision not to testify.
On the five charges of conduct unbecoming a Police Chief, the Arbitrator reached essentially the same conclusions as before. He discredited the secretary’s testimony concerning Cummings’s use of the words “bitch” and “whore”; discredited the pregnant officer’s testimony concerning the “fat” remark, noting that the officer was an interested witness in that she had her own lawsuit against the City and was friendly with the Chiefs secretary; found that the “I-Team” comment did not constitute misconduct in the circumstances; and doubted “how serious and improper” the kicking incident “really was.” Because Cummings’s contract had now expired, the Arbitrator ordered only monetary compensation this time, not reinstatement.
The parties have renewed their claims to have the award vacated (the City) or confirmed (Cummings). For the first time, as far as I am aware, the Cify argued (not in its brief, but orally) that by agreeing that the Arbitrator was to determine “[w]hether the City satisfied its burden of proving that Mr. Cummings engaged in conduct unbecoming a Police Chief, as charged and found by Hearing Officer Robert Rooney,” the parties meant that his task was limited to a deferential review of the Hearing Officer’s findings.
DISCUSSION
“[A] judge should not lightly undo the work of another judge.” Riley v. Presnell, 409 Mass. 239, 242 (1991). Nonetheless, “the power to reconsider an issue remains in the court until final judgment. ‘Even without rehearing, a judge may modify a decision already announced, so long as the case has not passed beyond the power of the court.’ ” Id. (citations omitted).
Regrettably, Judge Desmond’s order misunderstood the nature of an arbitration hearing, and the interplay between the contract’s provisions for a hearing before the Mayor can act, and for arbitration to review the Mayor’s action. Nowhere does the contract suggest that if a dispute is arbitrated, the Arbitrator is to be limited to evidence presented in the Mayor’s hearing.[2] Such a rule would grant the Hearing Officer the non-reviewable power to exclude material evidence. I am not aware of (and the City does not cite) any precedent suggesting that the Arbitrator should not hear evidence; to the contrary, an arbitrator’s “refus[al] to hear evidence material to the controversy” is one of the few grounds for vacating an award. G.L.c. 251, § 12(a) (4). The parties evidently understood this when they willingly participated in five days of eviden-tiaiy hearings.
The American Arbitration Association’s Labor Arbitration Rules, which the Agreement specifies are to govern the arbitration proceeding, explicitly contemplate that the Arbitrator will take evidence. Rule 27, for instance, provides:
The parties may offer such evidence as is relevant and material to the dispute, and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. An arbitrator or other person authorized by law to subpoena witnesses and documents may do so independently or upon the request of any party. *374 The arbitrator shall determine the admissibility, the relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant and conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default, or has waived the right to be present.
It was up to the Arbitrator to interpret and apply whatever rules the parties had agreed upon, and his interpretation is not reviewable by a court. Standoff v. Hertz, 10 Mass.App.Ct. 843, 844 (1980); see P. Finn et al., Mass. Practice Series, Mediation and Arbitration, 2015-16 Ed. at §16:1, p. 213. This principle would seem particularly apt when, as here, neither party objected to the evidentiary hearing; both called witnesses and introduced exhibits; and the City did not raise this issue in its Complaint for Declaratory relief, or in the Motion for Judgment on the Pleadings that followed.
In short: there never should have been a re-do, and it is therefore the first Award that is to be reviewed. Under familiar and well-established principles, a court considering a complaint to vacate an arbitration award is
strictly bound by an arbitrator’s findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing. “A matter submitted to arbitration is subject to a very narrow scope of review. Absent fraud, errors of law or fact are not sufficient grounds to set aside an award.” “Even a grossly erroneous [arbitration] decision is binding in the absence of fraud.” “An arbitrator’s result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference.”
Lynn u. Thompson, 435 Mass. 54, 61 (2001), cert, denied, 534 U.S. 1131 (2002) (citations omitted).
G.L.c. 151, §12 sets out the short list of grounds for vacating an arbitration award. Applying these, the first award offers no evidence of corruption, fraud, or other undue means by a party, or of evident partiality, corruption, or misconduct by the Arbitrator. The Arbitrator did not exceed his powers; nor did he wrongly refuse to postpone a hearing or to consider material evidence (quite the contrary), or otherwise fail to conduct the hearing in accordance with G.L.c. 251, §5. There are, in short, no grounds to vacate the award.[3]
As the Arbitrator recognized in the second Award, Cummings’s contract has now expired, so reinstatement is not available as a remedy. If the parties are unable to agree on such monetary compensation as will make Cummings whole for lost salary and benefits, minus any unemployment benefits or earnings from another job during the term of the contract, they may bring the issue back before the Arbitrator.
ORDER
For the foregoing reasons, Plaintiffs Motion for Judgment on the Pleadings is DENIED, and Defendant’s Motion to Confirm Arbitration Award is ALLOWED. The October 13, 2013 award is confirmed, except that the provision for reinstatement is vacated, the defendant being limited to monetary relief.

 The secretaiy was charged in the district court in August 2012 and acquitted in May 2013.

 he Agreement does provide, among its due process provisions in Section 5(b), that the Mayor is limited to such evidence in deciding whether to terminate the employee.

 I do not mean to suggest that the second award would be vacatable, were that the issue. In it, the Arbitrator did little to conceal his frustration at having to re-do his work, forget the five days of evidence (including Cummings’ testimony), and generate a new award using a protocol (in his words, “an appellate type of review of the evidence submitted at the Mayor’s disciplinary hearing . . .”) unfamiliar to the world of arbitration. Frustration, however, is not corruption, and it is not necessarily a badge of partiality. Each ruling was carefully justified with evidence from the original evidentiary hearing, and the whole would readily pass the deferential standard of judicial review of arbitration awards.